**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHELLY R. TAYLOR, f/k/a Shelly R. Madison, | |
| Plaintiff, | |
| v. | Case No. 18-CV-269-GKF-FHM |
| CITY OF CLAREMORE, a political subdivision and municipal corporation; JAMES THOMAS, individually; and FELICIA HENSON, f/k/a/ FELICIA BURNETT, individually, | |
| Defendants. | |

## OPINION AND ORDER

Before the court are three motions: the Motion to Dismiss [Doc. 39] filed by defendant James Thomas; the Motion to Dismiss [Doc. 40] filed by defendant City of Claremore; and the Motion to Dismiss [Doc. 43] filed by defendant Felicia Henson.

## I. Background

### A. Procedural History

On April 27, 2018, plaintiff Shelley R. Taylor filed a state district court petition in Rogers County, Oklahoma, asserting twelve causes of action against three defendants—the City of Claremore, James Thomas, and Tulsa Federal Credit Union ("TFCU"). [Doc. 2-1]. On May 7, 2018, plaintiff filed an amended petition. [Doc. 2-5]. Defendants City of Claremore and James Thomas then removed the action to this court, and plaintiff voluntarily dismissed her claims against TFCU. [Doc. 30].

On plaintiff's motion, the court granted her leave to file a second amended complaint adding a new claim against Felicia Henson for Fourth Amendment malicious prosecution pursuant to 42 U.S.C. § 1983. [Doc. 34]. Plaintiff then filed the Second Amended Complaint, and the court

struck new claims asserted therein against Henson for false imprisonment, invasion of privacy, abuse of process, civil conspiracy, and malicious prosecution under state law because those claims fell outside the scope of the leave previously sought by plaintiff and granted by the court. [Doc. 36]. Defendants now move to dismiss all remaining claims asserted in the Second Amended Complaint.

## B. Allegations in the Second Amended Complaint

The Second Amended Complaint contains the following allegations. Defendant Thomas was Town Administrator for Kingston, Massachusetts. [Doc. 35 ¶ 12]. Following a complaint of gender discrimination, he was placed on administrative leave in June 2012 and resigned in July 2012. [*Id.*]. In November 2012, the City of Claremore hired Thomas as its city manager. [*Id.*].

Claremore is a governmental entity under the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, § 151 *et seq*. [*Id.* ¶ 2]. In 2014, Claremore began using smart meters to read residents' electricity usage. [*Id*. ¶ 6]. Plaintiff, who is a Claremore resident, became a vocal opponent of increased utility rates and advocated to Claremore on behalf of residents. [*Id*. ¶¶ 1, 8]. Plaintiff organized a community meeting, maintained a Facebook blog, discussed the matter with media outlets, and caused a state legislator to contact Thomas about the issues. [*Id*. ¶¶ 8, 29].

On August 26, 2015, plaintiff wrote a check to Claremore to pay a utility bill. [*Id*. ¶ 14]. Felicia Henson, the utility office manager for Claremore, allegedly agreed that Claremore would hold the check for four days before depositing it. [*Id.*]. Plaintiff and Henson reached this agreement to avert plaintiff's utilities being disconnected due to her difficulty in paying the bill. [*Id.*]. The next day, August 27, 2015, Claremore deposited the check, which was declined. [*Id.* ¶ 21]. Claremore immediately disconnected plaintiff's utilities. [*Id.*]. The check was recorded as

returned on September 3, 2015, and plaintiff remitted cash to pay Claremore the amount due within twenty-four hours. [*Id.* ¶ 14].

After the check was returned, Claremore referred the matter to the Claremore Police Department. [*Id.* ¶ 22]. Specifically, Henson sent a fax or e-mail to the Rogers County District Attorney's Office containing documents pertaining to plaintiff, her account, and the alleged bogus check. [*Id.*]. Henson also e-mailed the documents in a shared file to defendant Thomas. [*Id.*]. Henson did not tell the Claremore police or the Rogers County District Attorney about the agreement to hold the check for four days. [*Id.*].

In October 2015, the Claremore Police Department, at the behest of Thomas, went to plaintiff's bank and requested information regarding plaintiff's account. [*Id.* ¶ 25]. The bank falsely asserted that plaintiff's account was closed. [*Id.*]. On October 28, 2015, a warrant was issued for plaintiff's arrest, and she surrendered for booking. [*Id.* ¶ 23]. Plaintiff was charged with false pretenses/bogus check/con game, a felony in violation of Okla. Stat. tit. 21, § 1541.2. [*Id.* ¶ 24]. The affidavit for probable cause did not mention the agreement to hold the check. [*Id.* ¶ 37]. On August 19, 2016, the criminal case came on for preliminary hearing, and the Rogers County District Court sustained plaintiff's demurrer, finding a lack of probable cause. [*Id.* ¶ 31].

Additionally, defendant Thomas disparaged plaintiff on various occasions. [*Id.* ¶ 29]. Specifically, in September 2015, Thomas returned a call to a Claremore resident who had concerns about utility rates. [*Id.*]. Thomas questioned whether the resident knew plaintiff and told the resident that plaintiff's utilities had been disconnected because she was fifteen days past due, and that plaintiff wrote a check on a closed account. [*Id.*]. In October 2015, Thomas discussed plaintiff's personal information with another resident and questioned plaintiff's integrity. [*Id.*]. In November 2015, Thomas directed his management members when complimented by a customer

to "[b]e careful she is a proud supporter of Shelly Taylor . . . this could be a trap. She is militant and not a smart meter supporter." [*Id.*]. In August 2016, Thomas disparaged plaintiff in an e-mail to Claremore's mayor when he referred to plaintiff as committing a felony, notwithstanding his knowledge that the criminal case had been dismissed. [*Id.*]. In April 2018, Thomas was questioned by the media and falsely stated that plaintiff had "committed perjury." [*Id.* ¶ 16].

## II. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## III. Discussion

The Second Amended Complaint asserts thirteen claims: (1) malicious prosecution under 42 U.S.C. § 1983 as to Thomas, Henson, and Claremore; (2) unlawful retaliation under 42 U.S.C. § 1983 as to Thomas and Claremore; (3) municipal liability as to Claremore; (4) intentional infliction of emotional distress as to Thomas; (5) false imprisonment as to Thomas; (6) false arrest

as to Claremore; (7) invasion of privacy as to Thomas; (8) abuse of process as to Thomas; (9) civil conspiracy as to Thomas; (10) malicious prosecution under state law as to Thomas; (11) false light invasion of privacy as to Thomas; (12) defamation as to Thomas; and (13) breach of contract as to Claremore.  The court addresses each of these counts in turn.

## A.  Count 1—Malicious Prosecution under 42 U.S.C. § 1983

In Count 1, plaintiff asserts a § 1983 claim for malicious prosecution against defendants Thomas, Henson, and Claremore.  Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  "The Fourth Amendment provides one source of rights enforceable in a § 1983 action."  *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017).  "Unreasonable seizures imposed *with* legal process precipitate Fourth Amendment malicious-prosecution claims."  *Id.* at 1085 (quoting *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013)).

Tenth Circuit precedent recognizes five elements for a Fourth Amendment malicious-prosecution claim under § 1983:

(1) the defendant caused the plaintiff's continued confinement or prosecution;

(2) the original action terminated in favor of the plaintiff;

(3) no probable cause supported the original arrest, continued confinement, or prosecution;

(4) the defendant acted with malice; and

(5) the plaintiff sustained damages.

*Margheim*, 855 F.3d at 1085.

Defendants argue that plaintiff fails to state a claim because (1) probable cause supported plaintiff's arrest; (2) plaintiff fails to allege Henson was acting under color of law; and (3) plaintiff

fails to allege facts sufficient to establish municipal liability as to the City of Claremore. The court addresses these arguments in turn.

## 1. Probable Cause

Plaintiff contends that certain information omitted from the probable cause affidavit vitiated probable cause. "Probable cause exists if the facts and circumstances are sufficient to warrant a person of reasonable caution to believe a crime has been committed." *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011). If evidence was withheld, the probable cause determination is made by considering whether, including the withheld exculpatory evidence, probable cause existed to prosecute. *Id.*

Plaintiff was arrested and charged with violation of Okla. Stat. tit. 21, § 1541.2, which requires, among other things, that the person accused acted with "intent to cheat and defraud." *See* Okla. Stat. tit. 21, § 1541.1; Okla. Uniform Jury Instructions—Criminal 5-39. Plaintiff alleges that she reached an agreement with Claremore, through Henson, that Claremore would hold plaintiff's check for four days before depositing it. Plaintiff further alleges that the probable cause affidavit used to secure the arrest warrant failed to mention this agreement. Inclusion of information about the agreement could have vitiated probable cause by negating the essential element of intent to cheat and defraud.[1] Accepting the factual allegations in the proposed Second Amended Complaint as true and construing them in the light most favorable to plaintiff, the court concludes that plaintiff has adequately alleged that her arrest and prosecution were not supported by probable cause.

---

[1] *See generally* John D. Perovich, *Application of "Bad Check" Statute with Respect to Postdated Checks*, 52 A.L.R.3d 464 (1973); *Albertson v. State*, 69 A.3d 1186, 1205 (Md. Ct. App. 2013) ("[W]here there was evidence of some form of agreement akin to a hold-check agreement, the intent element is lacking.").

## 2. Color of Law

To state a claim under § 1983, a plaintiff must allege a deprivation of a federally protected right by a person acting "under color of any statute, ordinance, regulation, custom, or usage of any State . . . ." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (quoting *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996)).

Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). However, "there are some circumstances where a tort by a state employee simply may not have been committed on account of the authority vested in the employee by the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494.

Here, plaintiff asserts that "Henson was acting under color of law in that she was the Utility Manager for the City of Claremore and acting in such capacity." [Doc. 35 ¶ 22]. Based upon the allegations in the Second Amended Complaint, the court can draw the reasonable inferences that Henson accepted plaintiff's check and advised plaintiff regarding the same while acting in her capacity as Claremore's utility manager and that Henson reported information about plaintiff's declined check to the Rogers County District Attorney's office and to Thomas in her official capacity, not in her private capacity. These inferences are supported by, among other things, the

allegation that Henson used her public e-mail to send documents regarding plaintiff to defendant Thomas. [*Id.*].

Defendants cite the Tenth Circuit's decision in *Schaffer*, 814 F.3d at 1153. In that case, a woman sued two parking enforcement officers for malicious prosecution under § 1983, alleging that the officers falsely reported to the police that the woman hit them with her truck after they issued her a parking ticket. 814 F.3d at 1153. Although the incident occurred while the officers were performing their duties as city employees, the Tenth Circuit held that the woman failed to establish the requisite nexus between the officers' alleged misconduct and their authority to write parking tickets, as "any citizen can report suspicious activity to the police and repeat that testimony in court." *Id.* at 1156.

*Schaffer* appears distinguishable. In *Schaffer*, the Tenth Circuit determined on a summary judgment record that "the parking officers, although employed by the City, acted in their private capacities when reporting and testifying against Schaffer." *Id.* at 1157. Here, plaintiff's factual allegations, if true, support a reasonable inference that Henson acted in her official capacity and misused her authority as utility manager when she falsely advised plaintiff that Claremore would hold the check for four days before depositing it and when she reported the declined check to law enforcement without disclosing the agreement to hold the check. Accordingly, plaintiff has adequately alleged the existence of a real nexus between Henson's conduct and her "badge" of public authority. Accepting the factual allegations in the proposed Second Amended Complaint as true and construing them in the light most favorable to plaintiff, the court concludes plaintiff has adequately alleged that Henson was acting under color of law.

**3. Municipal Liability**

A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, a plaintiff

must establish that (1) a policy or custom of the municipality exists and (2) the policy or custom caused the constitutional violation." *Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 653 n.11 (10th Cir.) (citing *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014)). To establish municipal liability, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

A municipal policy or custom may take the form of (1) a formal regulation or policy statement (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff argues that she has stated a claim against Claremore for municipal liability "under all avenues except formal based policy." [Doc. 48, p. 13]. The court addresses plaintiff's various theories of municipal liability below.

### i. Informal Custom

Plaintiff alleges that municipal liability is based on "the unlawful policy of Claremore wherein Claremore police requested personal and confidential records without a warrant or court order." [Doc. 35 ¶ 40]. Plaintiff alleges only a single instance in which Claremore police obtained bank account information without a warrant. Plaintiff fails to allege any facts showing that this "policy" amounted to "a widespread practice that . . . is so permanent and well settled as to

constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788. Moreover, plaintiff

fails to allege a direct causal link between this "policy" and any constitutional injuries she suffered.

## ii. Failure to Train

Plaintiff alleges that Claremore "failed to train its officers of the legality of obtaining such

information without a court order" and "unconstitutionally trained and supervised Thomas."

[Doc. 35 ¶¶ 53, 58]. "A municipality's culpability for a deprivation of rights is at its most tenuous

where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To

satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount

to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into

contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiff fails

to allege a pattern of similar constitutional violations by untrained employees or any other facts

showing that Claremore's alleged failure to train amounted to deliberate indifference.

## iii. Hiring Decision

Plaintiff alleges that "Claremore hired Thomas with knowledge of his prior unlawful and

unconstitutional conduct and hired him anyway" and that "a competent inquiry would have

revealed the risks of and indeed the likelihood of constitutional deprivations." [Doc. 35 ¶¶ 53, 57].

In *Brown*, the Supreme Court discussed § 1983 claims based on hiring decisions, observing

that such claims create "a particular danger that a municipality will be held liable for an injury not

directly caused by a deliberate action attributable to the municipality itself." 520 U.S. at 410.

Thus, "a court must carefully test the link between the policymaker's inadequate decision and the

particular injury alleged" in order to "prevent municipal liability for a hiring decision from

collapsing into *respondeat superior* liability." *Id.* The Supreme Court articulated an exacting

standard that requires the plaintiff to show that the deprivation of a particular right was the "plainly

obvious consequence" of the hiring decision:

A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

520 U.S. at 411.

Plaintiff does not allege that Claremore's hiring practices are generally defective, but instead seeks to premise liability on a single hiring decision. *See id.* at 408 ("Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high."). Plaintiff fails to allege facts showing that the deprivation of an individual's Fourth Amendment rights was "the plainly obvious consequence" of Claremore's decision to hire Thomas.[2] *Id.* at 411. Plaintiff thus fails to allege facts showing that Claremore's decision to hire Thomas constituted deliberate indifference sufficient to trigger municipal liability under § 1983.

### iv. Decision of a Final Policymaker

Plaintiff alleges that "Thomas was a final policy maker and decision maker" and that "Thomas had a bullying and harassment policy or custom." [Doc. 35 ¶¶ 53, 55]. In determining a local government's § 1983 liability, a court must identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the violation at issue. *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784–85 (1997). The

---

[2] Here, plaintiff alleges that Thomas had been placed on administrative leave as the Town Administrator for Kingston, Massachusetts, and resigned in the wake of a gender discrimination claim filed by a female police officer. [Doc. 35 ¶ 12]. Plaintiff also alleges that, months before, the town's unions had alleged that Thomas "had shown a complete lack of respect and employed bullying tactics during meetings for discussion of possible changes to employee health insurance plans." [*Id.*]. The deprivation of a citizen's Fourth Amendment rights cannot reasonably be said to be "the plainly obvious consequence" of Claremore's decision to hire Thomas.

court must ask "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* at 785.

Here, plaintiff alleges that Thomas was Claremore's city manager, meaning that he served at the will of the mayor and city council and was "responsible for administering the day-to-day operations." [Doc. 35 ¶ 56]. Plaintiff fails, however, to allege any facts showing that Thomas had authority to bind Claremore through his decisions on topics such as police investigations and Rogers County charging decisions. Plaintiff further fails to identify any specific edict or act by Thomas that may fairly be said to represent an official policy of Claremore that caused a deprivation of plaintiff's rights under the Fourth Amendment.

Although the Second Amended Complaint recites various legal phrases associated with municipal liability, it fails to allege sufficient *facts* to state a claim of municipal liability that is plausible on its face. Therefore, plaintiff's § 1983 claim for malicious prosecution against Claremore must be dismissed.

**B. Count 2—Retaliation under 42 U.S.C. § 1983**

In Count 2, plaintiff asserts a § 1983 claim for retaliation against defendants Thomas and Claremore. In general, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation mark omitted). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks omitted).

Plaintiff alleges that Thomas retaliated against her by "engendering a false arrest and criminal prosecution" and "making defamatory conduct about her to other customers [and] city employees and invading [her] privacy by disclosing personal information." [Doc. 35 ¶¶ 48–49].

Thomas and Claremore argue that the statute of limitations bars plaintiff's retaliation claim and that, regardless of the statute of limitations, plaintiff fails to state a claim for relief.

## 1. Statute of Limitations

The parties agree that plaintiff's § 1983 claims are subject to a two-year statute of limitations. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (two-year limitations period under Okla Stat. tit. 12, § 95(A)(3) applies to § 1983 actions). Plaintiff filed her original petition on April 27, 2018. Thus, the statute of limitations bars plaintiff's § 1983 claims to the extent they accrued prior to April 27, 2016.

Section 1983 claims generally accrue when the plaintiff had "a complete and present cause of action." *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A First Amendment retaliatory-prosecution claim, which does not require a favorable termination of the underlying action, accrues when the plaintiff "knew or had reason to know of the alleged retaliatory prosecution." *Mata v. Anderson*, 635 F.3d 1250, 1252 (10th Cir. 2011); *see also Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) ("Section 1983 claims accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action.").

Plaintiff alleges that Thomas performed two retaliatory acts within the two-year limitations period: (1) he sent a disparaging e-mail to Claremore's mayor in August 2016 and (2) he accused plaintiff of perjury in a statement to the media in April 2018. [Doc. 35 ¶¶ 29, 16]. To the extent plaintiff premises her retaliation claim on these two acts, her claim is timely.

Every other retaliatory act alleged by plaintiff occurred outside the two-year limitations period. In particular, plaintiff alleges that Thomas retaliated against her by engendering a false arrest and prosecution. [Doc. 35 ¶ 48]. Plaintiff's claim under this theory is time-barred because it accrued in October 2015 when she was charged and surrendered for booking. [*Id.* ¶¶ 23–24]. Plaintiff also alleges that Thomas retaliated against her by disclosing personal information and

defaming her in various statements in 2015. [*Id.* ¶ 49]. Plaintiff's retaliation claim based on these statements is also time-barred because she fails to allege any circumstances suggesting that she could not discover the statements before April 27, 2016.

### i. Continuing Violation Doctrine

Plaintiff concedes that "the applicable statute of limitations on some aspects of her 1983 retaliation claims . . . would have expired but for a tolling exception." [Doc. 48, p. 6]. She argues, however, that the "continuing violations doctrine" saves her claims from being time-barred. [Doc. 50, pp. 6–8]. Courts have applied the continuing violation doctrine in the Title VII employment law context, where it "permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

In published decisions, the Tenth Circuit has repeatedly declined to address whether the continuing violation doctrine applies to § 1983 claims. *See, e.g.*, *Vasquez*, 882 F.3d at 1277; *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017); *Mata*, 635 F.3d at 1253. In an unpublished decision, however, the Tenth Circuit has held that "the doctrine of continuing violations does not apply to § 1983 claims." *Mercer-Smith v. New Mexico Children, Youth & Families Dep't*, 416 F. App'x 704, 712 (10th Cir. 2011). Accordingly, several district courts in this circuit have subsequently held that the continuing violation doctrine does not apply to § 1983 claims. *See, e.g.*, *Doe v. Albuquerque Pub. Sch.*, No. 18-CV-00085 WP/KK, 2018 WL 4080684, at *5 (D.N.M. Aug. 27, 2018); *Reneau v. Fauvel*, No. 16-CV-00039-MSK-MJW, 2017 WL 892531, at *2 (D. Colo. Mar. 6, 2017); *Boyd v. City of Victoria, Kansas*, No. 16-4106-SAC, 2017 WL 3581737, at *10 (D. Kan. Aug. 18, 2017).

The court finds these authorities persuasive and sees no reason to extend the continuing violation doctrine to plaintiff's § 1983 retaliation claim. Moreover, even if the doctrine applies to § 1983 claims, the court is not persuaded, for the reasons set forth in section III(B)(2) below, that plaintiff "has identified sufficiently serious injuries within the statute of limitations period such that [she] can employ the continuing violation doctrine to sustain [her] action." *Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005) (unpublished).

## ii. Tolling Based on Ongoing Conspiracy

Plaintiff also argues that her claim is timely because she has alleged an ongoing conspiracy. [Doc. 50, p. 6]. As an initial matter, the court notes that plaintiff's factual allegations supporting a conspiracy theory are scant. Plaintiff asserts that "[a]ll parties acted in a conspiracy to cause [her] to be falsely arrested." [Doc. 35 ¶ 30]. But she alleges few facts suggesting agreement and concerted action among the parties. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt*, 17 F.3d at 1266 (quoting *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)).

Moreover, in the context of a civil conspiracy to violate constitutional rights, "the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows of or should have known of the injury), and does not run from the date of the last overt act that causes damage to the plaintiff." *Pereira v. Holmes*, No. 06-CV-643-TCK-SAJ, 2008 WL 6159914, at *2 (N.D. Okla. Sept. 30, 2008) (internal quotation marks omitted); *see also O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) (unpublished) (stating that the statute of limitations in a § 1985(3) claim "runs separately from each overt act of the conspiracy that allegedly caused injury"); *Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir. 1990) ("[D]iscrete claims of [constitutional] wrongs, despite their being averred as a continuing wrong, have been held barred where outside the time bar."). Consequently,

plaintiff's conspiracy allegations do not save her retaliation claim with respect to acts that allegedly occurred in 2015.

In support of her conspiracy tolling argument, plaintiff relies on the decision in *Robinson*, 895 F.2d at 655. In that case, the Tenth Circuit found the police officers' inducement of others to give false testimony against the plaintiff was an ongoing conspiracy for malicious prosecution that continued through the plaintiff's murder trial. The Tenth Circuit was persuaded that the plaintiff's claims for false arrest and imprisonment were essentially a part of the malicious prosecution conspiracy, and therefore did not accrue until the plaintiff was finally acquitted. *Robinson* is distinguishable. The Second Amended Complaint here is devoid of allegations sufficient to raise an inference that any alleged conspiracy between defendants Thomas and Henson continued beyond plaintiff's arrest. The alleged defamatory statement by Thomas in April 2018 was a discrete act, and plaintiff fails to allege any facts suggesting that the statement was a continuation of the alleged conspiracy between Thomas and Henson to instigate plaintiff's prosecution in 2015. Plaintiff cannot use a separate new act as a bootstrap to recover for injuries allegedly caused by old acts outside the limitations period.

Plaintiff's retaliation claim is therefore time-barred to the extent it is premised on retaliatory acts allegedly performed by Thomas before April 2016—in other words, the claim is time-barred except insofar as it is premised on (1) the August 2016 e-mail to the mayor and (2) the April 2018 statement to the media.

## 2. Failure to State a Claim

Having determined that plaintiff's retaliation claim is partially time-barred, the court must next determine whether the timely allegations are sufficient to state a claim. To prevail on a First Amendment retaliation claim against a defendant who is not her employer, a plaintiff must establish the following elements:

> (1) that the plaintiff was engaged in constitutionally protected
> activity; (2) that the defendant's actions caused the plaintiff to suffer
> an injury that would chill a person of ordinary firmness from
> continuing to engage in that activity; and (3) that the defendant's
> adverse action was substantially motivated as a response to the
> plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). "The objective standard of a person of ordinary firmness is a vigorous standard." *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004). Thus, "a trivial or de minimis injury" will not suffice. *Id.* (quoting *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001)).

As discussed above, plaintiff's retaliation claim, to the extent it is not time-barred, relies on two retaliatory acts allegedly performed by Thomas: (1) a disparaging e-mail sent to Claremore's mayor in August 2016 and (2) a defamatory statement to the media in April 2018. [Doc. 35 ¶¶ 29, 16]. The court addresses these two acts in turn.

The Second Amended Complaint contains only a single sentence regarding the e-mail:

> Thomas continued to retaliate against Plaintiff by disparaging her in
> an e-mail to the Mayor of Claremore in August of 2016 when he
> referred to Plaintiff as committing a felony regarding her criminal
> charges notwithstanding his knowledge that the case was dismissed.

[Doc. 35 ¶ 29]. Plaintiff fails to allege any injury she suffered as a result of this e-mail. Indeed, she does not explain when and how she learned of the contents of an e-mail between Thomas and the mayor. Because plaintiff has failed to allege that the e-mail caused her to suffer an injury that would "chill a person of ordinary firmness from continuing to speak out," she has failed to state a retaliation claim arising out of the e-mail. *Shero*, 510 F.3d at 1204; *see also Eaton*, 379 F.3d at 954 ("For there to have been a violation of First Amendment rights, the defendant's action must have had a deterrent, or 'chilling' effect on the plaintiff's speech.").

One alleged retaliatory act remains as a potential basis for plaintiff's retaliation claim: the statement in April 2018 by Thomas that plaintiff had "committed perjury." [Doc. 35 ¶¶ 16, 49]. Plaintiff asserts that this statement was "defamatory *per se* in that it connotes criminal conduct." [*Id.* ¶ 17]. As with the August 2016 e-mail, the issue is whether plaintiff has adequately alleged that the April 2018 statement caused her to suffer an injury that would chill a person of ordinary firmness from continuing to speak out.

In the First Amendment context, courts have recognized various forms of retaliation that can serve as the basis for a § 1983 claim, such as termination from government employment, prosecution, threatened prosecution, bad faith investigation, and legal harassment. *See generally Worrell*, 219 F.3d at 1212. Plaintiff has not cited any case in which a court has held that allegations of defamation were sufficient to state a claim for First Amendment retaliation under § 1983. The Tenth Circuit "recognizes that the nature of political debate is rough and tumble." *Eaton*, 379 F.3d at 956. Thus, "not all insults in public debate become actionable under the Constitution," and plaintiffs "are expected to cure most misperceptions about themselves through their own speech and debate." *Id.*

The Tenth Circuit addressed somewhat analogous circumstances in *Valdez v. New Mexico*, 109 F. App'x 257, 263 (10th Cir. 2004) (unpublished). In that case, the plaintiff alleged that a district attorney retaliated against him by, among other things, making defamatory comments to a reporter that plaintiff had been accused of a crime. *Id.* at 261. The Tenth Circuit held that the plaintiff failed to state a claim of First Amendment retaliation, noting that he "remained free to express his version of events, either in a political campaign or in contacts with the press." *Id.* at 263; *see also How v. City of Baxter Springs, Kansas*, 217 F. App'x 787, 790 (10th Cir. 2007) (unpublished) (plaintiff failed to show injury caused by prosecutor's false statement to newspaper

that charges against plaintiff would be refiled); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (affirming dismissal of retaliation claim on ground that defendant's alleged actions did not cause plaintiff to suffer an injury that would chill a person of ordinary firmness).

Here, plaintiff does not allege any actual injury she suffered as a result of the April 2018 statement, let alone an injury that would chill a person of ordinary firmness from continuing to speak out. Even if the court were to infer that the statement harmed plaintiff's reputation, the Tenth Circuit has stated, in the context of a First Amendment retaliation case, that "injury to one's reputation is not enough to defeat constitutional interests in furthering 'uninhibited, robust' debate on public issues." *Eaton*, 379 F.3d at 956 (quoting *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1248 (10th Cir. 2000)); *see also Blume v. Meneley*, 283 F. Supp. 2d 1178, 1188 (D. Kan. 2003) (allegations of retaliation by defamation were not sufficient to state a retaliation claim under § 1983).

The court concludes that plaintiff has failed to state a § 1983 claim for retaliation against Thomas. Because there can be no claim of municipal liability without an underlying constitutional violation, plaintiff also fails to state a retaliation claim against the City of Claremore.

## C. Count 3—Municipal Liability

In Count 3, plaintiff asserts a claim for "municipal liability" against the City of Claremore. Claremore argues, and plaintiff concedes, that municipal liability is not a standalone claim. Rather, plaintiff's claim of municipal liability is premised on her § 1983 claims, which the court has addressed above. Because it is duplicative of Counts 1 and 2, Count 3 must be dismissed.

## D. Count 4—Intentional Infliction of Emotional Distress

In Count 4, plaintiff asserts a claim for intentional infliction of emotional distress against defendant Thomas. Under Oklahoma law, a claim for intentional infliction of emotional distress requires a plaintiff to prove "extreme and outrageous conduct done intentionally or recklessly by

the defendant which resulted in severe emotional distress in the plaintiff." *Ridings v. Maze*, 414 P.3d 835, 839 (Okla. 2018). "While 'emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea,' it is only where the emotional distress is extreme that liability arises." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 736 (Okla. 2002) (quoting *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998)). The trial court must assume a "gatekeeper" role by making a threshold legal determination that the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Id.* at 735. Similarly, the court makes an initial determination whether severe emotional distress can be found. *Id.*

In the Second Amended Complaint, plaintiff asserts that Thomas "acted outrageously" and "acted with the intent to inflict emotional distress and did cause such distress." [Doc. 35 ¶¶ 62–63]. Such barebones allegations are insufficient. Plaintiff fails, as a matter of law, to allege any specific acts by Thomas that rise to the level of "extreme and outrageous conduct," as required to state a claim for intentional infliction of emotional distress. Moreover, plaintiff fails to plead any allegation that she suffered *severe* emotional distress. Therefore, plaintiff's claim for intentional infliction of emotional distress must be dismissed.

## E. Count 5—False Imprisonment

In Count 5, plaintiff asserts a claim for false imprisonment under Oklahoma law against defendant Thomas.[3] She alleges that Thomas "intentionally and recklessly caused [her] to be detained against her will." [Doc. 35 ¶ 67]. The only detention alleged by plaintiff occurred when she surrendered for booking on October 28, 2015. [*Id.* ¶ 23]. The statute of limitations for false imprisonment is one year. Okla. Stat. tit. 12, § 95(A)(4). Her claim accrued "on discharge from

---

[3] Thomas argues that plaintiff conflates false arrest and false imprisonment under Oklahoma law. The distinction is immaterial here because the claim is time-barred.

imprisonment," and "it is immaterial whether the proceedings under which plaintiff was imprisoned were terminated or not." *Belflower v. Blackshere*, 281 P.2d 423, 425 (Okla. 1955). Thus, the statute of limitations ran nearly eighteen months before plaintiff filed her petition in state court on April 27, 2018. Plaintiff alleges no circumstances that support a tolling exception. Therefore, plaintiff's false imprisonment claim against defendant Thomas is untimely and must be dismissed.

## F. Count 6—False Arrest

In Count 6, plaintiff asserts a claim for false arrest under Oklahoma law against defendant Claremore, which is a governmental entity under the GTCA. Oklahoma has adopted the doctrine of sovereign immunity and waived that immunity "only to the extent and in the manner provided in" the GTCA. Okla. Stat. tit. 51, § 152.1. The GTCA requires any person having a claim against the state or a political subdivision to present notice of the claim within one year of the date the loss occurs. *See* Okla. Stat. tit. 51, § 156(B) ("A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs."). The GTCA defines "loss" to mean "death or injury to the body or rights of a person or damage to real or personal property or rights therein." Okla. Stat. tit. 51, § 152(8). "Compliance with the statutory notice provisions of the GTCA is a jurisdictional requirement to be completed prior to the filing of any pleadings." *Hall v. GEO Grp., Inc.*, 324 P.3d 399, 404 (Okla. 2014).

The only arrest alleged by plaintiff occurred when she surrendered for booking on October 28, 2015. [*Id.* ¶ 23]. The GTCA required plaintiff to present notice of her claim for false arrest within one year—that is, by October 27, 2016. According to plaintiff, Claremore received her claim notice on July 31, 2017. [Doc. 48, p. 10]. She thus presented notice eight months after the statutory deadline. Plaintiff asserts that the limitations period "did not begin to run until the conclusion of her criminal case [August 19, 2016] as a result of the on-going conspiracy and

continuing violations." [Doc. 48, p. 10]. Plaintiffs fails, however, to cite any authority supporting such an exception to the GTCA's notice requirements. Because plaintiff failed to comply with the GTCA's notice requirements, her claim for false arrest against Claremore must be dismissed.

## G. Count 7—Invasion of Privacy

In Count 7, plaintiff asserts a claim for invasion of privacy against defendant Thomas. She alleges that Thomas invaded her privacy "by causing her confidential bank information to be disclosed" and "by disclosing her information to residents and others." [Doc. 35 ¶¶ 76–77]. The pertinent conduct allegedly occurred in September and October 2015. [*Id.* ¶¶ 25, 29]. Under Oklahoma law, the limitations period for plaintiff's invasion-of-privacy claim is two years. *See* Okla. Stat. tit. 12, § 95(A)(3); *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1186 (Okla. 2011). As discussed above, plaintiff does not allege any circumstances that support application of a tolling exception. Because plaintiff filed her initial petition approximately six months after the two-year limitations period ran, the statute of limitations bars her invasion-of-privacy claim, which must be dismissed.

## H. Count 8—Abuse of Process

In Count 8, plaintiff asserts a claim for abuse of process against defendant Thomas. She alleges that Thomas "used the legal process, including causing Plaintiff to be detained." [Doc. 35 ¶ 83]. The only relevant uses of legal process identified by plaintiff allegedly occurred on October 28, 2015, when a warrant for her arrest was issued and a felony charge was filed. [*Id.* ¶ 23–24]. Under Oklahoma law, the limitations period for an abuse-of-process claim is two years. *See* Okla. Stat. tit. 12, § 95(A)(3); *Greenberg v. Wolfberg*, 890 P.2d 895, 905 (Okla. 1994). The claim accrues "when the process is abused and damages are incurred, *regardless of when the action is determined*." *Id.* As discussed above, plaintiff does not allege any circumstances that support application of a tolling exception. Because plaintiff filed her initial petition approximately six

months after the two-year limitations period ran, her abuse-of-process claim is time-barred and must be dismissed.

## I. Count 9—Civil Conspiracy

In Count 9, plaintiff asserts a claim for civil conspiracy against defendant Thomas. Under Oklahoma law, a civil conspiracy "consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998). Civil conspiracy "does not itself create liability." *Id.* Instead, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Id.* at 148 n.85.

Plaintiff alleges that "Thomas and Henson conspired to deprive Plaintiff of her rights" and that their conduct "was done unlawfully and for an unlawful purpose." [Doc. 35 ¶¶ 89–90]. These conclusory allegations are insufficient to state a plausible claim for civil conspiracy under Oklahoma law. *See Cantwell v. De La Garza*, No. CV-18-272-D, 2018 WL 5929638, at *4 (W.D. Okla. Nov. 13, 2018) (finding allegations insufficient to state a civil conspiracy claim). In her response, plaintiff states that "the same facts that give rise to a tortious interference claim also give rise to Plaintiff's conspiracy claim." [Doc. 50, p. 15]. The meaning of this sentence is unclear, as plaintiff has not asserted a tortious interference claim in this case.

In addition, plaintiff's state-law conspiracy claim serves no apparent purpose. To the extent plaintiff asserts state-law claims against Thomas based on his individual actions (*e.g.*, defamation based on his April 2018 statement), the conspiracy claim against him adds nothing. To the extent plaintiff asserts state-law claims against Thomas based on the actions of Henson as Thomas's co-conspirator, such claims are time-barred for the reasons set forth in other portions of this order. It appears plaintiff asserts a civil-conspiracy claim in an attempt to avoid the statute of limitations, which has expired for the majority of her state-law claims. However, all of plaintiff's conspiracy

allegations against Thomas and Henson relate to acts that occurred in 2015. Plaintiff does not plausibly allege that Thomas's defamatory statement in April 2018 was part of his alleged conspiracy with Henson. Plaintiff cannot use Thomas's alleged defamatory statement in 2018 to revive time-barred claims arising from separate acts in 2015. Accordingly, plaintiff's state-law claim for civil conspiracy against Thomas must be dismissed.

## J. Count 10—Malicious Prosecution under State Law

In Count 10, plaintiff asserts a state-law claim for malicious prosecution against defendant Thomas. Under Oklahoma law, the limitations period for a malicious-prosecution claim is one year. *See* Okla. Stat. tit. 12, § 95(A)(4). Plaintiff's malicious-prosecution claim accrued no later than August 2016, when the criminal case against plaintiff was dismissed and the government declined to appeal. [Doc. 35 ¶¶ 31–32]. *See generally Greenberg*, 890 P.2d at 904 (discussing accrual of malicious-prosecution claims under Oklahoma law). The statute of limitations expired one year later in August 2017, approximately ten months before plaintiff filed her petition in state court.

Plaintiff concedes that the statute of limitations for a malicious-prosecution claim ordinarily runs from the dismissal of the criminal case. [Doc. 50, p. 15]. She argues, however, that "the statute was tolled by the last continual act within the conspiracy—the defamatory conduct of Thomas." [*Id.*]. The court finds this argument unpersuasive. Thomas's alleged defamatory statement in April 2018 has no bearing on when plaintiff could have first maintained a cause of action against Thomas for malicious prosecution. Plaintiff fails to cite any authority for the proposition that an ongoing civil conspiracy tolls the statute of limitations for a malicious prosecution claim under Oklahoma law. Moreover, plaintiff fails to allege facts sufficient to support an inference that Thomas's statement in April 2018 was a part of his alleged conspiracy with Henson in 2015. Plaintiff cannot use the 2018 statement to revive her time-barred malicious

prosecution claim. Therefore, plaintiff's claim against defendant Thomas for malicious prosecution under Oklahoma law must be dismissed.

**K.  Count 11—False Light Invasion of Privacy**

In Count 11, plaintiff asserts a claim for false light invasion of privacy against defendant Thomas.  The Oklahoma Supreme Court has recognized the tort of false light invasion of privacy as set out in the Restatement (Second) of Torts § 652A (1977).  *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 740 (Okla. 1980).  In order to establish such a claim, a plaintiff must establish three elements:

> (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1061 (Okla. Ct. Civ. App. 2002) (citing *McCormack*, 613 P.2d at 740).

Plaintiff alleges that Thomas placed her before the public in a false light by stating to the media, on or about April 30, 2018, that plaintiff had "committed perjury."  [Doc. 35 ¶¶ 16, 98].  Thomas argues that plaintiff's allegations suffer various deficiencies.  He argues that plaintiff fails to allege that he knew his statements were false.  Plaintiff does, however, expressly allege that Thomas made the comment "knowing it to be false."  [Doc. 35 ¶ 49]; *see also* FED. R. CIV. P. 9(b) (knowledge may be alleged generally).  Thomas also argues that plaintiff fails to allege sufficient "contextual information," suggesting that the news media took his comments out of context or that he merely expressed an opinion.  [Doc. 39, p. 27].  Accepting the factual allegations in the Second Amended Complaint as true and construing them in the light most favorable to plaintiff, the statement that plaintiff "committed perjury" appears to be a factual assertion, not a pure opinion.

Plaintiff has therefore alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## L.  Count 12—Defamation

In Count 12, plaintiff asserts a defamation claim against defendant Thomas.  She alleges that Thomas defamed her "by making false public statements of fact against her."  [Doc. 35 ¶ 104]. In order to recover for defamation under Oklahoma law, a private figure generally must prove four elements:

> (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication.

*Mitchell*, 60 P.3d at 1061; *see also* Okla. Stat. tit. 12, § 1441 (defining libel); Okla. Stat. tit. 12, § 1442 (defining slander).

Defendant Thomas argues that plaintiff fails to state a claim because she fails to state specifically the amount of special damages.  [Doc. 39, p. 29].  Plaintiff contends, however, that Thomas's statements constitute slander *per se*.  Slander is actionable *per se*, without a showing of actual damage, if it charges the plaintiff with a crime.  *See Mitchell* 60 P.3d at 1061; Okla. Stat. tit. 12, § 1442(1).  Plaintiff alleges that Thomas accused her of perjury, which is a crime.  Because plaintiff plausibly alleges slander *per se*, she is not required to plead specific damages.  Plaintiff has therefore alleged enough facts to state a claim for defamation that is plausible on its face.

## M.  Count 13—Breach of Contract

In Count 13, plaintiff asserts a claim for breach of contract against defendant Claremore. Under Oklahoma law, the elements of breach-of-contract claim are (1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach.  *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018).  Formation of a contract requires (1) parties capable of

contracting, (2) their consent, (3) a lawful object, and (4) sufficient cause or consideration.  Okla. Stat. tit. 15, § 2.  Plaintiff alleges two potential bases for her breach-of-contract claim, which the court addresses below.

**1. Policy Regarding Dishonored Checks**

Plaintiff alleges that Claremore disconnected her utilities "despite a written policy in place regarding dishonored checks that required advance notice prior to disconnection and a 24-hour period to make good on any dishonored check."  [Doc. 35 ¶ 21].  Plaintiff fails to allege sufficient facts regarding this supposed breach of policy to state a claim for relief that is plausible on its face. For example, she does not allege where that written policy was codified or otherwise published, how it imposed contractual obligations on Claremore,[4] or whether she received a cut-off notice prior to disconnection of her utilities.[5]  She also does not allege any damages caused by disconnection of her utilities.

**2. Hold-Check Agreement**

Plaintiff also alleges that she "reached an agreement with Claremore via Henson," pursuant to which plaintiff "would give a check to Claremore for the bill and Claremore would hold the check for four days before depositing."  [Doc. 35 ¶¶ 14, 20].  Plaintiff suggests that Claremore breached the agreement by depositing the check after only one day.  Plaintiff fails to state a breach-of-contract claim under this theory for two reasons.

---

[4]  The court takes judicial notice of Title 5, Chapter 50, § 7 of the Claremore Code of Ordinances, which provides, in pertinent part:  "It is the policy of the city to discontinue utility service to consumers by reason of non-payment of bills only after notice and a meaningful opportunity to be heard on disputed bills."  *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir. 1997) (court may take judicial notice of municipal ordinances on a motion to dismiss).  Notably, this section does not mention "a 24-hour period to make good on any dishonored check."

[5]  Plaintiff's allegations indicate she was aware of the possibility of her utilities "being disconnected as a result of her difficulty in paying the bill."  [Doc. 35 ¶ 14].

First, plaintiff fails to allege facts establishing that Henson had authority to bind Claremore in the manner alleged. Under Oklahoma law, "a party asserting agency has the burden of proof to show the 'existence, nature and extent of the agency relationship.'" *Bayless v. Christie, Manson & Woods Int'l, Inc.*, 2 F.3d 347, 352 (10th Cir. 1993) (quoting *Enterprise Mgmt. Consultants, Inc. v. Oklahoma Tax Commission*, 768 P.2d 359, 362 (Okla. 1988)). Pursuant to Claremore's Code of Ordinances, Henson did not have the authority to enter into an *oral* agreement of the kind alleged. The court takes judicial notice of Title 5, Chapter 50, § 8 of the Claremore Code of Ordinances, which provides, in pertinent part, that "[a]ll delayed payment agreements *shall* contain," among other things, the "[s]ignature of the customer and the city official in charge of utility billing." Because plaintiff does not allege the existence of an agreement signed by Henson as required by § 8, she fails to plausibly allege the formation of a contract enforceable against Claremore.

Plaintiff argues that Claremore's policies are "irrelevant to the existence of a contract." [Doc. 48, p. 18]. The court disagrees. "[I]f a person has means of knowledge reasonably open to him as to the limits of the agent's authority, he cannot hold the principal unless he uses ordinary diligence to ascertain them, even in those situations in which a principal is otherwise held although the agent goes beyond his authority. He has means of knowledge if he knows or has reason to know that the authority is evidenced by a document open to and intended for his inspection." *Bayless*, 2 F.3d at 353 (quoting *State v. West*, 796 P.2d 1178, 1181 (Okla. Ct. Civ. App. 1990)). Here, plaintiff had means of knowledge reasonably open to her as to the limits of Henson's authority, as Title 5, Chapter 50, § 1 of the Claremore Code of Ordinances provides as follows:

> The rates, rules and regulations contained in this chapter shall be considered a part of the contract between every person . . . who is supplied with electrical energy by the city. Every person . . . who uses electrical energy pursuant thereto shall be held to have consented thereto and be bound thereby.

Second, plaintiff fails to identify any consideration supporting Claremore's alleged promise to hold the check for four days. Sufficient consideration is an essential element of a contract. *Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 574 (Okla. 2007) (citing Okla. Stat. tit. 15, § 2); *see also Powers Restaurants, Inc. v. Garrison*, 465 P.2d 761, 763 (Okla. 1970) ("A promise made without supporting consideration is unenforceable."). By statute, good consideration for a promise is defined as follows:

> [a]ny benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor.

Okla. Stat. tit. 15, § 106. "As a general rule, consideration exists as long as there is a benefit to the promisor or a detriment to the promisee." *Thompson*, 174 P.3d at 574. "Generally, the sufficiency of consideration is a question of law to be determined by the court." *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50, 56 (Okla. 1990).

Plaintiff argues that Claremore bears the burden of showing a want of consideration. [Doc. 48, p. 18]. By statute, "[t]he burden of showing a want of consideration sufficient to support *an instrument* lies with the party seeking to invalidate or avoid it." Okla. Stat. tit. 15, § 115 (emphasis added). By definition, the term "instrument" refers to a "*written* legal document." *Instrument*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *accord* Okla. Uniform Jury Instruction–Civil 23.8, Notes on Use ("Who has the burden of proof on the issue of consideration will depend on whether the contract is written or oral."). Plaintiff does not allege the existence of a written contract; instead, she appears to premise her claim on an alleged oral promise. Accordingly, plaintiff bears the burden of pleading consideration sufficient to support formation of a contract.

Plaintiff identifies no benefit conferred on Claremore—"to which [Claremore was] not lawfully entitled"—as an inducement for Claremore's promise to hold the check for four days. Nor does plaintiff identify any prejudice she suffered—"other than such as [she was] at the time of consent lawfully bound to suffer"—as an inducement to Claremore. Because plaintiff had a preexisting legal duty to pay for utility services that she had previously received, her performance of that duty did not constitute consideration for Claremore's alleged promise. *See Watson v. Am. Creosote Works*, 84 P.2d 431, 433 (Okla. 1938) ("An agreement to do, or the doing of, that which a person is already bound to do, does not constitute a sufficient consideration for a new promise.").

Plaintiff suggests that the consideration was "not simply paying but paying with a check." [Doc. 48, p. 19]. Some authorities recognize that payment "in a different medium" from that required by a preexisting duty can, in some circumstances, constitute consideration for a new promise. Restatement (Second) of Contracts § 73, cmt. c, illus. 7 (1981); *see also* 3 Williston on Contracts § 7:27 (4th ed.). Under the Restatement formulation, a similar performance will constitute consideration only if it is different from what was originally required of the debtor "in a way which reflects more than a pretense of bargain." Restatement (Second) of Contracts § 73. Here, there are no allegations suggesting that Claremore preferred payment by check or that payment by check somehow served as an inducement to Claremore. Plaintiff therefore fails to allege sufficient consideration for Claremore's alleged promise.

Because plaintiff fails to allege facts showing that Henson had authority to bind Claremore in the manner alleged and fails to allege consideration for Claremore's alleged promise, her breach-of-contract claim must be dismissed.

## IV.  Conclusion

WHEREFORE, the Motion to Dismiss [Doc. 39] filed by defendant James Thomas is granted in part and denied in part; the Motion to Dismiss [Doc. 40] filed by defendant City of Claremore is granted; and the Motion to Dismiss [Doc. 43] filed by defendant Felicia Henson is denied.  Defendant Thomas's motion is granted with respect to Counts 2, 4, 5, 7, 8, 9, and 10, and is otherwise denied.

IT IS SO ORDERED this 31st day of July, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE